[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 245 
This is an action for damages for breach of a contract for the sale of chattels. The individual defendants, Joseph Bongiovanni and his brothers, agreed on *Page 246 
February 8, 1946, to sell to Harry Rich, who is one of the plaintiffs, a certain number of Fenestra steel window sash for $591, delivery to be made in four or five weeks, that is, around March 8th to 15th. The defendant, Steel Sash Sales and Service, Inc., a corporation organized in the summer of 1946, took over the business of the Bongiovanni brothers and assumed their obligations. The plaintiff, Ruth Rich, was the undisclosed principal in whose behalf her husband, Harry Rich, contracted. The defendants delivered some of the sash but entirely failed to deliver the greater part thereof. Upon the verdict of a jury, judgment for $3,000 and costs was rendered for the plaintiffs generally against the defendants.
The first group of reasons for reversal question the joinder of Harry and Ruth Rich as plaintiffs. A principal, whether named in the contract or undisclosed, can maintain an action on the contract. Bound Brook Crushed Stone Co. v. Wilson, etc., Co.,5 N.J. Misc. 482; affirmed, 104 N.J.L. 432 (E. A. 1928). Or the agent who contracts in his own name may sue. 3 C.J.S.,Agency, § 303, p. 233. But where the principal sues, we doubt whether the agent may be joined as a plaintiff unless the complaint discloses some reason for the joinder beyond the mere fact that the contract was made through his agency. The complaint which is before us does not show any reason for joining Harry Rich, or even that he has any interest in the litigation. The court denied defendants' motions that plaintiffs be required to elect which one of them would proceed in the action; and that the jury be directed to return a verdict that Harry Rich had no cause of action. Assuming that the election should have been required, or that a verdict should have been so directed, yet the defendants fail to show that their substantial rights were injuriously affected by the alleged error. Without a showing of prejudice, error is not a sufficient basis for a reversal of the judgment. R.S. 2:27-363.
The defendants also moved that a verdict be directed against Mrs. Rich on the ground that the evidence proved no contractual relationship between her and the defendants. But they argued this point on their motion for a new trial addressed *Page 247 
to the Common Pleas, and cannot reargue it on appeal. Cleary v.Camden, 119 N.J.L. 387 (E. A. 1938). See, also, Rule
3:59-5 to the same effect but not promulgated at the time of the motion. We may add that the evidence fully supported the denial of the motion for a direction of a verdict against Mrs. Rich.
Lastly, the appellants challenge the admission of certain evidence offered to establish the damages arising from the breach of the contract. Normally the measure of damages in a case of this sort is the difference between the contract price and the market or current price. To justify the award of a greater sum as damages, a plaintiff must prove special circumstances. UniformSales Law, R.S. 46:30-73. I must now set forth somewhat fully the facts, taking the evidence in an aspect favorable to the plaintiffs. Mrs. Rich, who was the owner of three vacant lots in Bradley Beach, known as 302, 304 and 403 Monmouth Avenue, decided to build a cottage on each lot and persuaded her husband to act for her in the enterprise. An architect prepared plans, and an experienced builder, Mr. Romm, was given charge of erecting the houses on a fee basis. There was no contractor. Mr. Romm collected a group of workmen, advised Mr. Rich on the purchase of materials, and superintended the work as it progressed.
Harry Rich, accompanied by Romm, called at the place of business of defendants in Weehawken to buy windows. Rich told Mr. Bongiovanni and Mr. Della Cerra, the salesman who took their order, that it was "very important that the windows be delivered on time and that the seasonal rental hinges on completion of these homes and perhaps also a sale." He said that the Rich-Romm Corporation was the builder and he did not tell them that he was acting for another, and he did not mention Mrs. Rich. A written quotation was made up but as the Rich-Romm Corporation had no credit rating, it was addressed to Harry Rich Co., the name under which Rich did business as a linoleum merchant. Rich then and there accepted the quotation and paid $50 on account of the purchase price. Within a day or so, Romm started work on the *Page 248 
cottages. Three or four weeks later, Rich told Della Cerra that he would be ready for the windows in about a week and was assured that the windows would be available by that time. From then on through March, Rich and Romm frequently asked defendants for the windows and were assured they would soon arrive. Finally, Rich was informed that the windows were on hand and on March 20th he sent a truck to Weehawken and found that there were windows for only one house. These he had Romm install in 403 Monmouth Avenue. The windows did not fit properly and were of an inferior quality; they were not accompanied by "hardware" and the hardware which was sent later did not fit either. Three months later, early in July, he had the windows ripped out and wooden windows put in their place.
No other windows were delivered by the defendants on their contract. On June 15th, Rich contracted elsewhere for wooden windows for the houses at 302 and 304 Monmouth Avenue.
Over the objection of defendants, the plaintiffs were permitted to prove what rentals Mrs. Rich lost because of the breach of the contract and the resultant delay in finishing the houses. I have already stated that her husband, when contracting for the windows, did not reveal that he was the agent for the owner but rather insinuated that he was acting for the contractors, Rich-Romm Corporation. The law does not permit the opposite party to the contract, the defendants, to be prejudiced, or their liability to be increased by the emergence of Mrs. Rich as principal and as plaintiff. 3 C.J.S., Agency, § 276a, and cases there cited. The measure of damages is the same as if a general contractor were the purchaser and were the plaintiff. To reach a measure of damages, the first inquiry is whether or not there was an available market where plaintiffs might have obtained steel windows in place of those ordered from the defendants. Fenestra is the trade name of steel windows made by Detroit Steel Products Company. That company, as Rich knew, had a place of business in Weehawken across the street from defendants; it also had an authorized dealer in Bradley Beach where the houses were *Page 249 
being erected. The contract called for deliveries the middle of March. Rich vigorously pressed the defendants during that month, but after the windows for one house had been received toward the end of March and proved unsatisfactory, Rich seems to have relaxed his efforts to get from defendants the rest of the windows. In the middle of June he ordered wooden windows, and not until July did he inquire whether he could buy Fenestra windows from someone other than defendants. He then found that he would have to wait a couple of months for delivery. He never tried to get steel windows of another brand than Fenestra.
But the defendants themselves proved that in the early part of 1946, metal window manufacturers were experiencing extreme difficulties. The conversion of industry from a war to a peacetime basis, a mad scramble for steel, a strike in the steel industry, resulted in a serious shortage of steel products. Government restrictions which gave a priority to housing for veterans, became effective in the middle of January. In the middle of March, when delivery was due under the contract in suit, and in April, there was no available market for steel windows suitable for Mrs. Rich's cottages. The defendants, at the time of contracting with Rich, knew that if they should fail to make delivery, it was unlikely that plaintiffs could get windows from other dealers. Evidence of the special damage sustained was properly received. Marcus Co., Inc., v. K.L.G. Baking Co.,122 N.J.L. 202 (E. A. 1938).
A materialman selling to a building contractor, does not assume that the latter will be answerable to the owner for lost rentals if there is a delay in the completion of the building. But in the instant case there was testimony that Rich told defendants at the outset that it was "very important that the windows be delivered on time and that the seasonal rental hinges on completion of these homes and perhaps also a sale." Mr. Bongiovanni is said to have replied that "he knows the importance of having it ready a little ahead of time either for rental or sale." The defendants may have wondered why Rich or the Rich-Romm Corporation was concerned about the loss that the owner might sustain in the *Page 250 
event of delay, but they had notice sufficient to make loss of income an element of the damage that was within the contemplation of both parties at the time they contracted.
Whether the loss of rents was a direct result of the breach of contract was a question for the jury. Since Rich delayed ordering wooden windows for two months after it seemed evident that defendants could not furnish metal windows, it might be said that this delay on Rich's part was the proximate cause of the loss. Or it might be said that the slight remaining prospect of getting windows from defendants and the difficulty of getting wooden windows, justified delay. It was proper for the court to permit the whole situation to go before the jury. There was no error in the admission of the evidence relating to rents.
The appellants made similar objections to proof of the cost of the wooden windows and of installation, etc. For the reasons already stated, these objections were properly overruled. Receipt of testimony that Rich contributed to his wife part of the cost of building, while not relevant, could not have harmed appellants.
Judgment affirmed. *Page 251