122 N.J. Super. 499 (1973)
300 A.2d 878
GULF CHEMICAL AND METALLURGICAL CORPORATION, A TEXAS CORPORATION, PLAINTIFF,
v.
SYLVAN CHEMICAL CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 5, 1973.
*501 Messrs. Riker, Danzig, Scherer & Brown, attorneys for plaintiff.
Mr. Francis B. Rusch, attorney for defendant.
VANTASSEL, J.D.C., Temporarily Assigned.
This action is brought by plaintiff Gulf Chemical and Metallurgical Corp. against defendant Sylvan Chemical Corp. for breach of a contract for goods sold and delivered. Defendant counterclaims, alleging a breach by the seller and non-delivery of two installments.
In its complaint plaintiff alleges that defendant owes it the full purchase price of the goods delivered. Defendant's answer alleges that the goods were nonconforming; that the purchase price of the goods was the subject of a modification by the parties, and that plaintiff is estopped from claiming the full amount because the quality of the goods did not meet the original specifications.
It is clear that the contract in question is an installment contract as defined by N.J.S.A. 12A:2-612(1), which states:
An "installment contract" is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause "each delivery is a separate contract" or its equivalent.
*502 It is undisputed that this action arose as a result of a series of negotiations culminating in one contract which contemplated the delivery of the goods in three separate lots to be separately accepted. This was evidenced by three purchase orders sent by defendant to plaintiff together on the same date.
N.J.S.A. 12A:2-709, dealing with an action for the price, states that:
(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price
(a) of goods accepted * * *
The facts are clear that defendant-buyer did accept the shipment of the first installment from plaintiff. N.J.S.A. 12A:2-606 indicates that the acceptance of goods occurs when the buyer does any act inconsistent with the seller's ownership. Such an act was done when Sylvan sold the shipment to its customer.
Such a sale, of course, does not preclude a revocation of the acceptance by defendant. However, as indicated by N.J.S.A. 12A:2-608, a revocation of acceptance presupposes that the goods were nonconforming. Since the court finds as a fact that Sylvan made a valid express waiver as to size specification with respect to the shipment in question, and that such shipment was in conformity with the contract specifications agreed upon, defendant must pay at the contract rate for the goods it has accepted. N.J.S.A. 12A:2-607(1).
Notwithstanding defendant's obligation to pay the full purchase price which accrued upon acceptance, the subsequent agreement between the parties modified defendant's obligation with respect to the price. Testimony reveals that Gulf agreed to allow five cents on the contract price of 42 cents a pound, thereby reducing defendant's obligation to 37 cents a pound for the total pounds delivered in the first installment. This adjustment was a valid modification of the *503 contract. The New Jersey Study Comment to N.J.S.A. 12A:2-209 states that "subsection 2-209(1) permits parties acting in good faith and for good business reasons to modify their contract without danger of frustration on grounds of lack of consideration." There is no evidence that either party acted in bad faith in effecting this modification, and therefore the court will take cognizance of its effect upon plaintiff's damage for defendant's failure to pay for the goods sold and delivered, and enter judgment in favor of plaintiff for $9,372.35.
Defendant counterclaims for damages based on plaintiff's failure to deliver two shipments which it was obligated to do under the terms of the installment contract. The seller argues that its obligation to deliver the two remaining shipments was terminated because of defendant's failure to pay for the first shipment. Gulf contends that if a buyer withholds payment of an installment in order to coerce the seller into completing delivery with respect to the balance of the contract, the seller will no longer be bound to do so. Plaintiff cites 46 Am. Jur. Sales, § 270 at 455 (1943), and 75 A.L.R. 616 (1931), for that proposition. The persuasiveness of these authorities is questionable in view of the fact that the cases that posit this point were all decided in jurisdictions other than New Jersey and all arose prior to the adoption of the Uniform Commercial Code in this State.
There is, however, a New Jersey case which is in point and, though decided prior to the adoption of the Uniform Commercial Code, is consistent with current New Jersey law. In Empire Rubber Mfg. Co. v. Morris, 77 N.J.L. 498 (E. & A. 1909), the seller claimed that the refusal of the buyer to pay for goods already shipped pursuant to an installment contract released the seller from any obligation of further performance on their part. The court in that case states the rule that
When the seller has agreed to deliver the goods sold in installments, and the buyer has agreed to pay the price in installments *504 which are proportioned to and payable on the delivery of each installment of goods, then the default by either party with reference to any one installment will not, ordinarily, entitle the other party to abrogate the contract.
The current policy of New Jersey with respect to the above rule is reflected in the Uniform Commercial Code's section dealing with installment contracts. N.J.S. 12A:2-612(3) states:
Whenever non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he accepts a non-conforming installment without seasonably notifying of cancellation or if he brings an action with respect only to past installments or demands performance as to future installments.
That this subsection is in line with the rule as expressed in Empire Rubber with respect to the continuance of an installment contract is demonstrated by Uniform Commercial Code Comment (6) to N.J.S.A. 12A:2-612:
[This subsection] is designed to further the continuance of the contract in the absence of an overt cancellation ... Whether the non-conformity in any given installment justifies cancellation as to the future depends, not on whether such non-conformity indicates an intent or likelihood that the future deliveries will also be defective, but whether the non-conformity substantially impairs the value of the whole contract. (As indicated further in the Comment, `prior policy is continued, putting the rule as to the buyer's default on the same footing as that in regard to seller's default') ... If only the seller's security in regard to future installments is impaired, he has the right to demand adequate assurance of proper future performance but has not an immediate right to cancel the entire contract....
In order for the seller to relieve itself of its obligation to continue the contract, there must be a showing by the seller that buyer's failure to pay for the first installment "substantially impaired" the value of the whole contract. There is no such proof in this case. Furthermore there was never an overt cancellation of the entire contract by the *505 seller. Therefore plaintiff is liable to defendant for non-delivery of purchase orders 8640 and 8641.
As to defendant's damages for non-delivery, N.J.S.A. 12A:2-713(1) states that
The measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this Chapter (12A:2-715), but less expenses saved in consequence of the seller's breach.
This section cannot be applied to the case at bar since there is no proof on behalf of defendant that the market price for the goods purchased was any different than the price contracted for with plaintiff. This does not, of course, preclude the defendant from suing for consequential damages.
N.J.S. 12A:2-715(2)(a) states:
Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; * * *.
As indicated by the Comment to this section:
Under section 2-715, consequential damages would be allowed in this case if the breaching seller at the time of contracting had reason to know that a resale was contemplated. But the section does not seem to permit speculative damages, and, consequently, expected profits are not allowed by it, unless they clearly would have been earned. By the same token, the buyer should not be permitted to speculate as to the loss of profits resulting from the alienation of customers. This is all taken care of by imposing upon the buyer the burden of proving the extent of the loss by way of consequential damages.
Defendant did prove that it had entered a contract with one of its customers for the resale of the goods. As indicated in Pope v. Ferguson, 82 N.J.L. 566 (E. & A. 1912):
*506 if at the time of sale, the existence of a sub-contract is not made known to the seller, a knowledge on his part that the buyer is purchasing with a general intention to resell will not render him liable for special damages resulting from the resale.
As stated by the New Jersey Study Comment to N.J.S.A. 12A:2-715,
Only one serious inroad has been made on the Pope v. Ferguson statement of the law. Marcus & Co. v. K.L.G. Baking Co., Inc., 122 N.J.L. 202 (E. & A. 1938), held that special damages can be recovered where the making of a resale was contemplated by the parties, even though the resale contract was not in existence at the time when the contract of sale was made.
Therefore, if the court finds as a fact that Gulf had reason to know that Sylvan would resell the material contracted for and that Sylvan did, in fact, enter a resale contract, defendant would be entitled to any consequential damages, including loss of profits, which it could prove were a result of plaintiff's breach.
As indicated by a letter dated January 29, 1971 from Joseph J. Darvin, consultant to Sylvan Chemical Corporation, to Edward E. Bryan, manager, commercial development, of Gulf Chemical Metallurgical Corporation, plaintiff-seller was apprised of Sylvan's desire for a five-or ten-pound sample of black cupric oxide, "for samples to our various buyers." Two purchase orders from Sea Board Supply Co. in evidence, as well as the testimony of Mr. Darvin, demonstrate that Sylvan did, in fact, have contracts for the resale of the cupric oxide. Therefore, plaintiff will be liable to defendant for the former's failure to deliver the second and third shipment, but only to the extent that Sylvan has proved resale contracts for those shipments.
The proofs reveal that Sylvan would have paid Gulf $20,160 for 48,000 pounds of cupric oxide, calculated at 42 cents a pound. With the addition of freight charges and the cost of pallets, the total cost to Sylvan for the second and third shipments would have been $22,024.08. If Sylvan had *507 made a resale contract for the entire 48,000 pounds, it would have been paid $26,400, with a resulting loss of profits amounting to $4,375.92. However, defendant was only able to prove contracts for the resale of 75% of the cupric oxide which plaintiff failed to deliver. Any loss of profits with respect to the balance of the undelivered material for which no resale contract was proved would be speculative. Therefore, the court enters judgment in favor of defendant for $3,281.94, which represents the loss of profits sustained by Sylvan as a result of plaintiff's failure to deliver the second and third shipment of cupric oxide.
With respect to the issue of plaintiff's standing to maintain this lawsuit, the court finds that Gulf Chemical & Matallurgical Corporation, a Texas corporation, has standing to bring this suit despite the fact that it has not qualified to do business in the State of New Jersey under N.J.S.A. 14A:13-3. It is clear under that statute that if plaintiff is transacting business in New Jersey it has no standing to bring this lawsuit since it is not qualified to do business in this State. However, the court finds that under the facts in this case and the applicable case law, plaintiff is not transacting business in New Jersey. Plaintiff's responses to interrogatories posed by defendant regarding plaintiff's business in New Jersey show that Gulf has no substantial business contact with the State of New Jersey. The holding in United States Time Corp. v. Grand Union Co., 64 N.J. Super. 39 (Ch. Div. 1960), supports plaintiff's argument that since it was not transacting business in New Jersey, it need not qualify in New Jersey in order to bring this lawsuit.