166 N.J. Super. 467 (1979)
400 A.2d 90
LAWRENCE SEAMAN AND ALAN SEAMAN, t/a SEAMAN MARINE CO., PLAINTIFFS-RESPONDENTS,
v.
UNITED STATES STEEL CORPORATION AND BUSHWICK IRON AND STEEL COMPANY, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1979.
Decided March 7, 1979.
*468 Before Judges LYNCH, CRANE and HORN.
Mr. William S. Tucker, Jr. argued the cause for appellants (Messrs. Stryker, Tams & Dill, attorneys; Mr. Stephen D. Cuyler and Ms. Alice S. Thiele on the brief).
Mr. Frederick L. Bernstein argued the cause for respondents (Messrs. Wittman, Anzalone, Bernstein, Dunn & Lubin, attorneys).
The opinion of the court was delivered by HORN, J.A.D.
Defendants United States Steel Corporation (U.S. Steel) and Bushwick Iron and Steel Company, Inc. (Bushwick) appeal from a judgment for $85,000 entered against them on the verdict of a jury following an extended trial. The sole issue submitted to the jury by reason of defendants' admission of liability was the amount of damages to which plaintiffs were entitled.
*469 The essential facts giving rise to the action are not in dispute.[1] Since about 1962 plaintiffs Lawrence and Alan Seaman, partners in Seaman Marine Co., were in the general marine business, specializing in marine salvage in West New York, New Jersey. This work consists of raising and removing sunken obstructions in waterways. Plaintiffs also engaged in ancillary activities such as selling marine equipment, i.e., barges, tugboats, cranes, tanks, winches and equipment anchors, and constructing and assembling various pieces of marine equipment.
In 1971 they decided to construct a floating crane of 100-ton capacity. A typical land crane was to be permanently affixed to the flat top of some type of barge or tanker. Plaintiffs purchased a tanker[2] and acquired a crane base and a separate arm or boom. Adaptations were made to each to fit them together and thereby to fabricate a floating crane barge.
The boom was 122 feet in length. Work was required to fit the boom to the crane base, because the boom was of a different manufacture from that of the base. Then the crane was to be fitted to the barge. In order to affix the boom to the crane base it was necessary to procure steel to fabricate a "heel plate" which would provide a strong linkage of the two. Plaintiffs had determined that the purchase of two seven-inch plates of steel would be the basis for an ideal design. Alan located a seemingly appropriate single seven-inch plate weighing about 500 pounds at the Brooklyn premises of Bushwick.
Plaintiffs went to Bushwick to view the plates. They had a general discussion with Bushwick concerning pieces they were going to have made for the boom, the specifications for the steel and whether or not Bushwick was going to rough-cut it for them. Bushwick told plaintiffs that the steel *470 was A36 plate. Plaintiffs explained to Bushwick the purpose for which they were buying the steel, but Bushwick stated that they were not sure if plaintiffs could use it for that purpose because Bushwick did not know the exact bearing quality. So Bushwick suggested that plaintiffs call U.S. Steel.
Plaintiffs called and explained to U.S. Steel the purpose for which they were buying the plates. U.S. Steel said that the pieces were acceptable for that purpose and were actually a better quality steel. It was then agreed that plaintiffs would purchase the plates as long as U.S. Steel supplied a certificate bearing the qualifying chemical analysis of the properties of the steel.[3] Plaintiffs paid Bushwick $410.45 for the steel.
Plaintiffs sought to affix the boom to the crane base by means of the heel plate fashioned from the steel supplied by defendants, but encountered various difficulties. After defendants were notified of the problem it was ascertained and admitted by a representative of U.S. Steel that the steel as supplied did not have the properties as certified.
Plaintiffs instituted this action against both defendants, sounding in tort and breach of contract. At the inception of the trial defendants admitted liability, on the assumption that the damages would be the same under either theory. As stated, the case was tried only as to damages, with the resultant award to plaintiffs.
Defendants contend: (1) the trial judge erred in submitting the issue of lost profits to the jury; (2) his charge on lost profits was erroneous; (3) since there was no proof adduced by plaintiffs that defendants either were notified of or could have reasonably foreseen the consequential damages claimed, the judge erred in permitting the jury to consider awarding such damages, and (4) the judge erred in *471 failing to charge on mitigation of damages. We consider (1), (2) and (3) together, since the facts and applicable law as to each are substantially identical.
The provisions of the Uniform Commercial Code (Code), N.J.S.A. 12A:1-101 et seq., apply. N.J.S.A. 12A:2-714 sets forth the extent of a buyer's damages for breach in regard to accepted goods. Under that statute a buyer may recover: (1) any loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable; (2) the difference between the value of the goods accepted and the goods as warranted, and (3) in proper cases, any incidental and consequential damages under N.J.S.A. 12A:2-715. Incidental and consequential damages under § 715 are stated to be as follows:
(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
(2) Consequential damages resulting from the seller's breach include
(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
(b) injury to person or property proximately resulting from any breach of warranty.
Damages consisting of loss of profits come within the category of consequential damages. N.J.S.A. 12A:2-715(2) accords with prior New Jersey case law as exemplified in Pope v. Ferguson, 82 N.J.L. 566, 572-573 (E. & A. 1911), although "consequential damages" are referred to therein and in some other New Jersey cases as "special" damages. Marko v. Sears, Roebuck and Co., 24 N.J. Super. 295, 303 (App. Div. 1953). See, also, the use of the term "special damages" in the Uniform Sales Act, N.J.S.A. 46:30-76, which was repealed upon the enactment of the Code in New Jersey in *472 1961. The Code rule as stated in § 715(2) and our pre-Code cases in effect follow the holding of Hadley v. Baxendale, 156 Eng. Rep. 145, 9 Exch. 341 (1854). See Patco Products, Inc. v. Wilson, 5 N.J. 543 (1950); Pope v. Ferguson, supra; Marcus & Co., Inc. v. K.L.G. Baking Co., Inc., 122 N.J.L. 202 (E. & A. 1938); New Jersey Study Comment following N.J.S.A. 12A:2-715.
In the instant case, while defendants knew the general purpose for which plaintiffs required the steel, i.e., to fashion the heel plate, the evidence does not disclose that defendants at the time of the purchase of the steel had reason to know of any loss which might result to plaintiffs from the latter's general or particular requirements and needs. Plaintiffs did not tell defendants that they contemplated any particular contract or work which required the use of the floating crane. As noted by defendants, at the time of the purchase plaintiffs had no timetable for completion of the floating crane. Defendants had no reason to know at the time of contracting that plaintiffs might suffer a loss of profits if there was a breach of the contract. Nor was there any evidence that would have permitted a jury to find that the parties at the time of the purchase of the steel reasonably foresaw such possible losses. Had they known, they might have refused to sell the plate without some assurance that they would not be responsible beyond a stipulated sum.
In the face of this lack of knowledge plaintiffs introduced testimony of loss of profits allegedly resulting from their inability to bid on an Army contract which required the use of the crane and, alternatively, loss of rental value of the floating crane at $25,000 a month. The judge at the close of plaintiffs' evidence struck out the testimony as to the loss of potential profits from the Army contract, on the ground that they were too speculative, but refused to strike the testimony as to the rental value. The size of the verdict undoubtedly was a consequence of the proof as to rental value.
Rich v. Bongiovanni, 4 N.J. Super. 243 (App. Div. 1949), furnishes an illustration of where consequential *473 damages were held to be admissible. In that case defendants were held liable for their breach of contract to supply steel windows to plaintiffs, who were building houses for third persons. When the windows were ordered the sellers were told that it was "`very important that the windows be delivered on time and that the season rental hinges on completion of these homes and perhaps also a sale.'" 4 N.J. Super. at 247 Accordingly, the court upheld the action of the trial judge in permitting plaintiffs to prove what rentals the party for whom plaintiffs were building the houses lost because of defendants' breach of contract and the resultant delay.
The judge's decision to permit the jury to consider the alleged loss of rental value of the floating crane appears to have been predicated on his interpretation of Restatement, Contracts, § 331(2) at 515 (1932)[4]:
(1) Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.
(2) Where the evidence does not afford a sufficient basis for a direct estimation of profits, but the breach is one that prevents the use and operation of property from which profits would have been made, damages may be measured by the rental value of the property or by interest on the value of the property. [Emphasis supplied]
Whether a party is entitled to recover damages by virtue of a breach of sale of personal property is governed by the provisions of the Code, in the instant case, N.J.S.A. 12A:2-714 and 715. The Restatement may be considered in conjunction with the Code provisions, but only if the damages *474 are recoverable under the Code. If no profits are recoverable under the Code because of the failure of proof or otherwise, the Restatement will not furnish the legal basis for such recovery. We have concluded that in the light of the proofs in the instant case plaintiffs were not legally entitled to recover alleged loss of profits.
But even if loss of profits under the circumstances was admissible, we cannot agree with the trial judge's interpretation of Section 331(2) of the Restatement. That interpretation comprehended the concept that, simply because plaintiffs could not establish "a direct estimation of profits," without more they were entitled to introduce in evidence the rental value of the floating crane. In other words, the judge determined that even in the absence of any proof that plaintiffs would have earned a profit had there been no delay, and without any proof that plaintiffs would have been able to rent out the floating crane for any part of the interval of delay caused by defendants, plaintiffs were entitled to prove the rental value.
In arguing for the correctness of the judge's interpretation plaintiffs lay much stress on the text of 5 Corbin on Contracts, § 1029 at 177-178 (1964), and particularly:
* * * Thus, where the breach by the defendant has prevented the use and operation of property by the plaintiff from which use profits would probably have been made, the damages to be recovered may be measured by the rental value of the property or by interest on the reasonable value of the property as an investment. [Emphasis supplied]
It seems to us, as is argued by defendants, that the alternative method of proving damages must depend on there being evidence that "profits would have been made." If this were not so, the award of such rental value would result in plaintiffs' receiving moneys which they would not have received had there been no breach of contract. In substance, such recovery would constitute exemplary damages to which they were not entitled.
*475 Plaintiffs had never operated a crane of this size in their business, nor had they ever rented such a crane to others. It was to be a new operation in their business, without prior experience as to the floating crane's potential as profit-producing equipment. Cf. Weiss v. Revenue B. & L. Ass'n, 116 N.J.L. 208 (E. & A. 1935). In Apex Metal Stamping Co. v. Alexander & Sawyer, Inc., 48 N.J. Super. 476, 481 (App. Div. 1958), the court restated the necessity to distinguish between uncertainty as to the fact of damage and uncertainty as to its amount. It is where it is certain that damages have resulted and the evidence affords a basis for estimating the damages with some degree of certainty that recovery is allowed. Id. at 482. We conclude that here, apart from the fact there was no evidence under Code provision 12A:2-715 that such loss was within the reasonable contemplation of the parties, the alleged loss of rental value was incorrectly admitted and incorrectly considered by the jury under the quoted section of the Restatement, because it was not shown that plaintiffs suffered any loss of profits or that they had previously engaged in the floating-crane rental business and, finally, it was not shown that they had lost any opportunity to rent the floating crane.
As already indicated, it is clear that the jury's verdict included some damages for loss of profits based on the rental value of the floating crane, since the award was substantially higher than the other losses which were shown. See, supra, n. 4. Consequently, it is necessary that there be a new trial as to damages only.
Also, since there will be a retrial, we address defendants' argument (4)  that the judge should have charged the jury as to the duty of plaintiffs to mitigate their damages. Defendants had submitted a request for such instruction. Where the pleadings and evidence create issues which legitimately comprehend the duty of a party to minimize his damage, the judge should so instruct the jury. 25A C.J.S. Damages § 184 at 209.
*476 In the instant case, insofar as the incidental damages resulting from out-of-pocket losses are concerned, the judge charged that they must be "reasonable." As to these there was no need to specifically instruct the jury as to mitigation. The judge should only give such instruction if it appears from the evidence that there is some basis for such special instruction. See Frank Stamato & Co. v. Lodi, 4 N.J. 14, 21 (1950).
Reversed and remanded for a new trial as to damages. We do not retain jurisdiction.
NOTES
[1] Defendants' single witness was an expert, who testified only as to one aspect of plaintiffs' damage claims.
[2] A Landing Ship Tank, commonly known as an L.S.T.
[3] The required steel had to have a certain hardness, but one which would not prevent its being welded.
[4] Plaintiffs also introduced evidence as to the value of plaintiffs' investment in the floating crane, amounts borrowed by them and interest paid on the loans, cost of operating their business per year, costs of assembling the heel plate which ultimately was used and certain other costs allegedly resulting from the failure of defendants to supply the steel as represented.