OHOUD ESTABLISHMENT FOR TRADE AND CONTRACTS, Plaintiff,

v.

TRI–STATE CONTRACTING & TRADING CORPORATION, Roger Wilco Inc., Pepsi-Cola and National Brands Beverages, Ltd., Pepsi-Cola Bottling Company of Pennsauken, New Jersey, Paterson Canning Co., Inc., Pepsico, Inc., Continental Can Co., a division of Continental Group Inc., Farrell Lines, Inc., United Arab Shipping Company, (S.A.G.), Barber Steamship Lines, Inc., and J. E. Hogan Forwarders, Inc., all of the foregoing in personam, and S/S ASTORIA, S/S BLACKFORD, MELANPUS M/V EXPORT COMMERCE & EXPORT BAY, their respective engines, machinery, tackle, furniture, etc., in rem, Defendants.

and

CONTINENTAL CAN COMPANY, a division of the Continental Can Group Inc., Defendant-Third-Party Plaintiff,

v.

PEPSI–COLA METROPOLITAN BOTTLING COMPANY, INC., Third-Party Defendant.

Mohamed BAHAKIM, Plaintiff,

v.

TRI–STATE CONTRACTING AND TRADING CORP., Pepsi-Cola and National Brand Beverages, Ltd. (formerly Pepsi-Cola Bottling Company of Pennsauken, New Jersey), Pepsico, Inc., and Continental Can Company—U.S.A., Defendants.

and

PEPSI–COLA AND NATIONAL BRAND BEVERAGES, LTD., Defendant-Third-Party Plaintiff,

v.

PEPSI–COLA METROPOLITAN BOTTLING COMPANY, INC., Farrell Lines, Inc., United Arab Shipping Company

(S.A.G.), Barber Steamship Lines, Inc., and J. E. Hogan Forwarders, Inc., Third-Party Defendants.

and

CONTINENTAL CAN COMPANY—U.S.A., Defendant-Third-Party Plaintiff,

v.

PEPSI–COLA METROPOLITAN BOT-TLING COMPANY, INC. (Pepsi-Metro), Third-Party Defendant.

Civ. Nos. 79–1422, 79–2018.

United States District Court, D. New Jersey.

Sept. 22, 1981.

Pitney, Hardin, Kipp & Szuch by Clude Szuch, Morristown, N.J., for plaintiff Ohoud.

Arthur L. Lessler, South River, N.J., for plaintiff Bahakim.

Willkie, Farr & Gallagher by Stephen Greiner, New York City, and Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan by Gregory B. Reilly, Roseland, N.J., for defendant Continental.

Shanley & Fisher by A. Dennis Terrell, Newark, N.J., for defendant Pepsi-Cola Metro. Bottling Co.

Schwartz & Andolino by Edward R. Schwartz, Newark, N.J., for defendants Pepsi-Cola, National Brand Beverages, Ltd., Pepsi-Cola Bottling Company of Pennsauken, New Jersey, and Patterson Canning Co., Inc.

McCarter & English by Francis E. P. McCarter & Lanny S. Kurzweil, Newark, N.J., for defendant Tri-State Contracting & Trading Corp.

Carpenter, Bennett & Morrissey by John P. Dwyer, Newark, N.J., and Kirlin, Campbell & Keating by John B. Conway, New York City, for defendants Farrell Lines Inc., United Arab Shipping Company (S.A. G.), and Barber Steamship Lines, Inc.

Greenberg, Shmerelson, Weinroth & Etish by George Weinroth, Camden, N.J., for defendant Roger Wilco Co.

## OPINION

SAROKIN, District Judge.

Two motions in this case are presently pending before this court. First, defendants Farrell Lines, Inc. ["Farrell"] and United Arab Shipping Co. ["S.A.G."] [collectively referred to as "ocean carriers"] move for summary judgment on the cross-claims of defendants Continental Can Co., U.S.A., ["Continental"] Pepsi-Cola and National Brand Beverages, Ltd. ["National Brands"], Pepsico, Inc., Roger Wilco Inc., Tri-State Contracting and Trading Corp. ["Tri-State"], and J. E. Hogan Forwarders Inc. filed against the ocean carriers in Civil Action No. 79–1422. In addition, defendant ocean carriers move for dismissal of the third party complaint of National Brands demanding indemnity and/or contribution from them in the event of any liability found on the part of National Brands in Civil Action No. 79–2018.

A second motion has been brought by defendants Continental, Pepsi, Inc., Pepsi-Cola Metropolitan Bottling Co., Inc. [collectively "Pepsi"], Pepsi-Cola and National Brand Beverages, Ltd., Pepsi-Cola Bottling Co. of Pennsauken, New Jersey and Patterson Canning Co., Inc. who move for judgment on the cross-claims asserted by defendant Tri-State and the claims asserted by plaintiff Mohamed Bahakim pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Both Tri-State and Bahakim ("claimants") allege damages in the form of harm to their business reputations and for loss of future profits. They base their respective claims on negligence, strict liability and breach of warranties surrounding the imperfect delivery of soda after leakage was sustained during the transoceanic shipment of Pepsi-Cola to Tri-State's agents in Saudi Arabia.

*FACTUAL BACKGROUND*

During 1978, defendant Tri-State contracted with various importers for the sale of large volumes of Pepsi-Cola. The sale

was on standard C & F terms with payment arranged by letters of credit. Mohamed Bahakim served as Tri-State's commission agent in Saudi Arabia, and, as such, he solicited orders for Pepsi-Cola from various importers located in Jeddah, Saudi Arabia. Tri-State served as the conduit between the American soda manufacturers and the Saudi market.[1]

The soda was contained in twelve ounce aluminum cans which were manufactured by Continental Can Co. for Pepsico, Inc. The cans were filled at the plant of Patterson Canning Co., now a subdivision of National Brands. After filling, the cans were packed on trays, covered with "shrink wrap", and shipped to National Brands' warehouse in Pennsauken, New Jersey where the trays were unloaded and were hand packed directly into twenty foot containers for the ocean carriage to the Middle East. The containers were sealed at the warehouse and transported to the ocean terminals in Philadelphia and New York by various trucking companies.

Tri-State had independently made arrangements for the ocean shipment of the Pepsi through J. E. Hogan Forwarders, Inc., who in turn booked space for Tri-State with various ocean carriers, including the defendants Farrell Lines and United Arab Shipping. The ocean carriers issued negotiable bills of lading which Tri-State presented at various American banks prior to the arrival of the carriers in the Middle East.

Tri-State sold more than 700,000 cases of Pepsi to Near Eastern purchasers, of which approximately 411,000 cases were sold to the six Saudi Arabian importers who are involved in this action (of the six, five assigned their claims to the plaintiff Ohoud). Tri-State was fully paid for all its sales of

Pepsi, and Bahakim received payment in full of his commission for his role as agent-solicitor.

When the shipment arrived in Jeddah, the Pepsi-Cola cans were found to have sustained significant amounts of leakage, and as such was not merchantable.

*PROCEDURAL BACKGROUND*

Subsequently, two suits were brought. Commencing in May of 1979, Ohoud, as assignee of the claims of five Saudi importers, sued Tri-State, as well as Continental Can, Pepsi, and National Brand.[2] Ohoud sought compensation for direct and consequential damages resulting from the alleged total loss of the shipment. Tri-State asserted affirmative cross-claims against the co-defendants for damage to Tri-State's reputation and for loss of future business. The primary claims of the plaintiffs have been settled. At this time, only Tri-State's affirmative cross-claims remain in said action.

Shortly after the *Ohoud* action was filed, Bahakim instituted a suit against the same defendants.[3] Bahakim also claims damage based upon lost future profits. Bahakim does not allege that any of the moving defendants, Continental Can, Pepsi or National Brands, knew that Bahakim was in any way involved in the transactions. In response to Bahakim's claims, National Brands and Pepsi Cola instituted a third party complaint against the ocean carriers demanding indemnity and/or contribution, if the third party plaintiffs were held liable to Bahakim.

The two actions were consolidated in July of 1979. Presently, the moving defendants seek a judgment on both Tri-State's and

---

1. Indeed, as the pleadings indicate, none of the moving defendants knew of Bahakim's involvement until after the damage was discovered. Furthermore, neither Continental Can nor Pepsi was aware of Tri-State.

2. Ohoud named as defendants Tri-State Continental Can Co., National Brands, Pepsico, Inc., Roger Wilco, Inc., Farrell Lines, Inc., United Arab Shipping Co., Barber Steamship Lines, Inc., J. E. Hogan Forwarders, Inc., and the

vessels Export Bay, Export Commerce, Melanpus, Astoria and Blackford.

3. Mohamed Bahakim, a commission sales agent for Tri-State, based in Saudi Arabia, had brought a separate action similar to Tri-State's cross-claim in a New Jersey state court. Upon learning of the *Ohoud* federal action, Bahakim discontinued his state court action and instituted a federal claim which was ultimately consolidated with the *Ohoud* suit.

Bahakim's claims for unspecified future business profits, contending that they are without foundation as a matter of both law and fact.

The court now has before it two separate motions. First, defendant ocean carriers move for dismissal of the third party complaint of National Brands. Second, defendants Continental Can, Pepsi and National Brands move for judgment on the pleadings dismissing claims of Tri-State and Bahakim for loss of future profits.

*DISCUSSION*

A. The "Ocean Carriers".

█ In assessing the liability of an ocean carrier to his co-defendants for indemnity and/or contribution in a suit surrounding the delivery of damaged goods, this court is bound by the strictures of the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300, *et seq.* Carrier liability attaches only if the plaintiff in the main action can sustain the *prima facie* case required under COGSA and common law. To meet these requirements, those making claims against an ocean carrier must adduce proof that the goods in question were received by the carrier in good condition and that they were subsequently delivered at their destination in a damaged condition. *Dempsey & Associates v. S.S. Sea Star*, 461 F.2d 1009 (2d Cir. 1972); *Nichimen Company v. MV Farland*, 333 F.Supp. 691 (S.D.N.Y.1971), *modified and aff'd* 462 F.2d 319 (2d Cir. 1972). COGSA, Section 1303(4) allows the bill of lading to serve as proof of the first prong of plaintiff's *prima facie* test that the cargo was delivered to and received by the carrier in good condition.

█ However, the bill of lading as evidence of receipt of goods in proper condition by the carrier is rebuttable proof. The bill as required by COGSA indicates among other things only "the *apparent* order and condition of the goods." COGSA, 46 U.S.C. § 1303(3)(c). (emphasis supplied) If the carrier can prove that the deterioration of the goods may have resulted from a hidden defect in the goods themselves, then "the shipper must present some evidence beyond the bill of lading since the bill of lading is

evidence only of apparent or external good condition." *Hecht, Levis & Kahn, Inc. v. The S.S. President Buchanan*, 236 F.2d 627, 631 (2d Cir. 1956). See also *American Tobacco Co. v. Goulandris*, 281 F.2d 179 (2d Cir. 1960). Therefore, although some courts may find an ocean carrier generally chargeable with knowledge of the special characteristics of cargoes accepted for carriage, this does not apply to "the occult peculiarities of defective items". *Indiana Farm Bureau Cooperative Association v. S.S. Sovereign Faylenne*, 1978 A.M.C. 1514 (S.D.N.Y. 1977).

If there is an indication that the goods themselves were defective at the time of delivery to the carrier, then the carrier is statutorily immune from liability. COGSA Section 1304(2) states in its pertinent part that:

> 1304(2). Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from . . .
>
> (m) Wastage in bulk or weight or any other loss or damage arising from inherent defect, quality or vice of the goods; . . . 46 U.S.C. § 1304(2)(m).

Similarly, subsection (n) of Section 1304(2) bars liability for damages resulting from insufficiency of packing. These two statutory provisions excuse all liability from an ocean carrier; as such, they serve as absolute defenses against all claims.

This discussion of the liability requirements of COGSA serves to illuminate the curious dilemma a party faces when he attempts to plead a case concerned with the damage of goods received in the transnational distribution chain of consumer products. Frequently, as in the present case, the plaintiff in instituting his suit will plead liability in the alternative against the manufacturer/distributor and against the ocean carrier. Typically, Ohoud's complaint alleges that the ocean carriers damaged the goods and, in the alternative, alleges that the other defendants manufactured or packed the goods in a negligent or defective manner. This method of pleading ultimately results in only one liable defendant, ei-

ther the carrier or the defendant manufacturers. Hence, the plaintiff, when pleading, is caught between what one court analogized as the scylla of having to prove delivery to the ship in a defective condition to prevail in its warranty claim against the seller/manufacturer and the charybdis of having to prove the contrary in order to prevail against the carrier under COGSA. *Indiana Farm Bureau Cooperative Association v. S.S. Sovereign Faylenne,* 1978 A.M.C. at 1525–26.

The *Indiana Farm* case is strikingly similar and thoroughly illustrative as to the perils of alternative pleading in suits against ocean carriers and manufacturers. In *Indiana Farm,* two actions, which were subsequently consolidated, were brought against the ocean carrier and against the manufacturer and seller when a shipment of bagged fertilizer, ordered pursuant to a C & F contract, was delivered in a damaged state. Cross-claims were made for indemnification and contribution in the event of liability, after plaintiff pled alternatively that either the carrier was responsible for the damage or that the manufacturer produced and seller sold a defective product. The District Court for the Southern District of New York found that the latent defects barred any possible liability on the carrier's part. Equally, this conclusion quashed the cross-claims for contribution and/or indemnity. *Id.*

Presently, the ocean carriers will be immune under COGSA § 1304 from liability if Ohoud's damages resulted from the negligent or defective manufacturing or packaging of the goods by the co-defendants. This would preclude indemnity and contribution by the ocean carriers. Conversely, pursuant to the C & F contract and the strictures of the Uniform Commercial Code [U.C.C.] the co-defendants will have no liability if the cargo was damaged by the carriers. According to the U.C.C., risk of loss in the absence of a breach passes to the buyer when the seller, in accordance with the C & F contract, tenders the goods to the possession of the carrier. U.C.C. § 2–509(1)(b), *Sessa v. Riegle,* 427 F.Supp. 760, 768 (E.D. Pa.1977), *aff'd,* 568 F.2d 770 (3d Cir. 1978).

Therefore, in the present case, if the soda was delivered in proper condition to the ocean carriers, the risk of future damage by the acts of the carriers passed to the buyer. The co-defendants were as of that moment free from liability for any subsequent loss. Absent liability, there is no basis for the co-defendants to institute a claim for indemnity and/or contribution.

█ Ultimately, in this case there exists no possible marshalling of the facts which could yield a situation in which the ocean carriers would be liable to the co-defendants for indemnity and/or contribution. For the aforementioned reasons, the ocean carriers' motion for summary judgment will be granted and the cross-claims for indemnity and/or contribution by the co-defendants will be dismissed.

B. Loss of Future Profits Claimed by Tri-State and Bahakim.

Tri-State and Bahakim allege damage to their respective business reputations and damages for loss of future profits. They base their claims on negligence, strict liability and breach of warranty. The right to recover such damages under each theory is substantially governed by the same rules. Before undertaking the required analysis it is important to note what is *not* involved in this case.

The parties seeking relief are not consumers but are brokers. There was no injury to the person or property of the claimants or anyone else. No direct and present economic loss is alleged. The claimants received payment in full.

The claimants seek damages for future losses only. The court must determine whether such damages are recoverable assuming that they are otherwise provable; in essence, whether a jury should be permitted to consider such damages in arriving at a verdict.

In contract cases recovery for lost profits has traditionally been denied unless the defendant could have foreseen or had been notified that such losses would be probable

consequences of a breach. If a defendant could have foreseen or had been so forewarned, he could have declined the risk or protected against it. He might also have demanded additional consideration from the buyer for the assumption of such risk. Obviously these cases arise because the parties have not specifically dealt with the problem and the court (or jury) must determine whether such losses were within the reasonable contemplation of the parties at the time the agreement was reached.

The claimants argue that the issues herein presented must be resolved by a jury, and such argument presents a tempting method to avoid grappling with this difficult issue. But the issue of foreseeability is not always one which necessitates resolution by the fact finder. Although not authoritative, Poor Richards Almanac (1758) is illustrative:

For want of a nail the shoe was lost;
For want of a shoe the horse was lost;
And for want of a horse the rider was lost;
For the want of a rider the battle was lost;
For the want of a battle the kingdom was lost;
And all for the want of a horseshoe-nail.

The court would have little difficulty in submitting the loss of the shoe, the horse, and probably the rider to a jury if caused by the sale of a defective nail or the failure to deliver the nail as agreed. The loss of the battle creates a doubtful question, but the loss of the kingdom is so remote as to bar its submission to a jury.

It is the loss of their respective kingdoms that the claimants seek herein. They do not seek damages arising from the defects in the direct sale or any specific or potential resale. They seek damages for the loss of other future sales not yet in existence with the same and other customers.

The specific issue presented in this case is as follows: If a broker arranges for the delivery of goods on behalf of several customers and those goods are delivered in a defective condition, can the broker collect damages from the seller equivalent to the loss of future business by reason of the refusal of such customers and others to deal with him by reason of such breach. Stated differently, is the loss of business such that it would ordinarily follow the breach or that reasonable men in the position of these parties would have foreseen the loss as a probable result of the breach?

█ Should the defendant manufacturers and sellers have reasonably contemplated that the business community dealing with Tri-State and Bahakim would cease doing business with them because of a failure totally beyond the control of the brokers? We think not. The action of the present and potential customers under such circumstances would have been *unreasonable*. Defendants cannot be held liable for the unreasonable and unanticipated action of others. Such irrational conduct on the part of others cannot be said to have been within the contemplation of the parties.

To hold the movants liable for the remote and speculative losses claimed by Tri-State and Bahakim would impose extraordinary burdens on commercial life. The law is not quick to impose liability in the absence of physical injury or property damage for expectant future economic losses, particularly where the losses have been incurred by parties unknown and unforeseeable to the defendants (i. e. Pepsi's and Continental Can's ignorance of Mr. Bahakim's role in the sales). The reasonable conduct of commercial life requires that a line be drawn beyond which claims will not be heard. Such a demarcation has been established by both the state law within this district and the accumulated discussions on the limitations of consequential commercial damages.

As the court in *Rickards v. Sun Oil Co.*, 23 N.J.Misc. 89, 41 A.2d 267 (1945) indicated, "[i]t is fundamental that there must be some reasonable limitation of liability for the commission of the tort. The wrongdoer is not liable in the eyes of the law for all possible consequences." *Id.* at 93, 41 A.2d 267. The *Rickards* court found that an extension such as the one suggested by Tri-State and Bahakim for damages stem-

ming from lost future profits would impose a liability entirely disproportionate to the act committed or to the failure to perform the duty assumed. As such, remote, speculative and fanciful damages are to be excluded from recovery as a matter of law. *Id.* at 95, 41 A.2d 267.

The *Rickards* decision limiting defendant's liability for consequential damages concerned with expectant gains was cited approvingly by the New Jersey Supreme Court in *Caputzal v. The Lindsay Co.*, 48 N.J. 69, 222 A.2d 513 (1966). In *Caputzal*, the court was faced with claims based on breach of warranty, strict liability and negligence. In finding the damages prayed for to be too remote to warrant recovery and thereby granting summary judgment, the court indicated that the foreseeability test it employed to determine the remoteness of damages was applicable irrespective of any distinction between the theories plaintiff had pled. *Id.* at 72, 222 A.2d 513. As such, in the present action, the recoverability of the damages complained of by Tri-State and Bahakim for lost future profits is determined by the same test of foreseeability for each of the three different causes of action alleged by the complainants.[4]

Foreseeability and remoteness are intimately related terms. That which is remote is such because it is not foreseeable. According to *Caputzal*, "[f]oreseeability is not solely a mere matter of logic, since anything is foreseeable, but frequently involves questions of policy as well." *Id.* at 75, 222 A.2d 513. Similarly, determinations surrounding the questions of foreseeability should be based "upon mixed considerations of logic, common sense, justice, policy and precedent." *Id.* at 77–78, 222 A.2d 513.

Frequently, in their determinations as to the remoteness of certain damages and the lack of connection between defendant's acts and plaintiff's supposed harms, the courts have turned to Section 435(2) of the Restatement Second of Torts. See, *Caputzal v. The Lindsay Co., supra; Dwyer v. Erie Investment Co.*, 138 N.J.Super. 93, 350 A.2d 268 (App.Div.1975). The Restatement would remove liability when "looking back from the harm to the actor's . . . conduct, it appears to the court highly extraordinary that it should have brought about the harm." Restatement, Torts 2d, § 435(2).

Remote and speculative damages have been barred since the days of *Hadley v. Baxendale*, 156 Eng.Rep. 145, 9 Exch. 341 (1854). More recently, the *Hadley* decision was codified in New Jersey with the enactment of N.J.Stat.Ann. § 12A:2–715(2)(a). It states in the pertinent part:

.    .    .    .    .

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . .

Thusly, any specific needs of the buyer that might result in special consequential damages must generally be made known to the seller in order to charge the seller with damages for failure to meet those special needs. See *Pope v. Ferguson*, 82 N.J.L. 566, 83 A. 353 (1912).

Remote, speculative and problematic damages were barred in the cases of *Reliance Molded Plastics, Inc. v. Jiffy Products*, 215 F.Supp. 402 (D.N.J.1963) *aff'd* 337 F.2d 857 (3d Cir. 1964); *Seaman v. United States Steel Corp.*, 166 N.J.Super. 467, 400 A.2d 90 (App.Div.) *cert. denied* 81 N.J. 282, 405 A.2d 826 (1979). In both of the afore-

---

4. The spectrum of recovery may be greater in a traditional tort action than in a breach of warranty or contract case. If a label is necessary, the latter description is more apt in this case rather than the former. Although the terms are used interchangeably, "foreseeability" is a more appropriate test in tort actions, while the reasonable contemplation of the parties seems better suited for contract or warranty cases.

The reason that the recovery in tort actions appears to be extended further than in contract actions is that the parties lacked the opportunity in the typical tort action to discuss and agree upon the scope of the risk. Furthermore, public policy warrants greater protection for the innocent consumer over a buyer of goods in a commercial setting where the parties are in a relatively equal bargaining position.

mentioned cases, damages for loss of future profits were denied. In the *Seaman* case plaintiff's failure to inform defendants of the possibility of related future losses was dispositive of any claim for such damages. In *Seaman*, defendant supplied a steel part to be used in the construction of a floating crane by plaintiff for later use in marine salvage operations. The part proved defective and delayed completion of the crane. Defendant admitted it had knowledge of the intended use of the product and that it had actually attested as to the fitness of the supplied part for the intended use. The defendant even admitted liability. The only question left for the court was the measure of damages. The trial court awarded plaintiff lost future profits.

Citing N.J.Stat.Ann. § 12A:2–715, the Appellate Division reversed and denied recovery for loss of future profits. The court reasoned that "while defendants knew the general purpose for which plaintiffs required the steel, ... the evidence does not disclose that defendants at the time of the purchase ... had reason to know any loss which might result to plaintiff from the latter's general or particular needs." *Seaman*, 166 N.J.Super. at 472, 405 A.2d 826.

The same can be said of the facts at bar. There is nothing in the pleadings to indicate that even the most prudent defendant could have foreseen Tri-State's supposed complete loss of future benefits in Saudi Arabia. That such a result should occur from the one incomplete or defective delivery, no matter its size, is highly extraordinary at best. That such a result is related in any way to the unfulfilled requirements of the Saudi Arabian's religion (supposedly the soda was destined for the holy fast of the Moslem period of Ramadan) is the type of "particular requirement" that according to statutory and common law must be communicated to the seller at the time of the contract. The knowledge of such a potential alienation of potential customers is solely within the control of the complaining parties. Fundamental fairness will not allow them to withhold such information to the detriment of the moving parties.

Recently, the court in *Gulf Chemical and Metallurgical Co. v. Sylvan Chemical Corp.*, 122 N.J.Super. 499, 300 A.2d 878 (Law Div.), *aff'd*, 126 N.J.Super. 261, 314 A.2d 73 (App. Div.1973) embraced the New Jersey Study Comment for N.J.Stat.Ann. § 12A:2–715 in its analysis of alienation of future business as acceptable grounds for damages. According to the Comment and the court, Section 2–715 "does not seem to permit speculative damages, and, consequently, expected profits are not allowed by it, unless they clearly would have been earned. By the same token, the buyer should not be permitted to speculate as to the loss of profits resulting from the alienation of customers." *Id.* 122 N.J.Super. at 505, 300 A.2d 878.

Tri-State offers in its memorandum of law a string of tort cases that allowed recovery based on the alienation of customers resulting from defendants' tortious acts. Although they do relate to food suppliers, they are inherently distinguishable. In all of the cases, the food that caused the loss was spoiled or contained some unnatural, horrific addition (i. e., the mouse in the milk bottle). Indeed, it is the psychological effect that such spoiled food can have on a food seller's reputation that encourages and justifies recovery. However, in the present case, the soda was not spoiled, the cans had merely sustained leakage during transport. No general consumer judgments can be directly drawn as to the quality or wholesomeness of the soda itself.

The damages sought by Tri-State and Bahakim are not recognized as proper damages by the controlling law of this district. If all consequences of the sale of defective merchandise are recoverable, we may stifle commerce. Although the domino theory may create an actual link between defendants' breach and claimants' total loss of business, factual causation in and of itself cannot provide a basis for recovery. If the manufacturer of the nail becomes responsible for the loss of the kingdom, then we may not have any more nails.

For the aforementioned reasons, the cross-claim of Tri-State and the complaint of Bahakim are dismissed.