**KUNSTSTOFFWERK ALFRED HUBER,
Alfred Ziegler, Substituted
Plaintiff, Appellee,**

v.

**R. J. DICK, INC., Appellant.**

No. 79–1855.

United States Court of Appeals,
Third Circuit.

Argued Jan. 8, 1980.

Decided May 12, 1980.

David J. Meloy (argued), Stanley, Lande, Coulter & Pearce, Muscatine, Iowa, Spencer A. Manthorpe, Hepburn, Ross, Willcox & Putnam, Philadelphia, Pa., for appellant.

Werner H. Von Rosenstiel (argued), Bellwoar, Rich & Mankas, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge and ADAMS and WEIS, Circuit Judges.

### OPINION OF THE COURT

WEIS, Circuit Judge.

■ In this diversity case, the district court concluded that under the Uniform Commercial Code the buyer has the burden of establishing that the seller agreed to pay consequential damages when goods proved defective. We hold that to avoid such liability the seller must prove an agreement that limits damages, and, in this instance, the course of dealing between the parties was not adequate to demonstrate such an understanding. Accordingly, we modify a judgment in favor of the plaintiff-seller for goods sold to allow credits for losses on resale incurred by the defendant-buyer.

The plaintiff brought suit in the United States District Court for the Eastern District of Pennsylvania to recover the cost of nylon industrial belting it sold to the defendant. Counterclaims asserted that some of the belting had been defective. After a bench trial, the district court entered judgment for the plaintiff, deducting from the requested damages portions of the amounts sought by two of the defendant's counterclaims.

The defendant, R. J. Dick, Inc., distributes nylon cord belting throughout the United States. Its principal place of business is in Iowa, and it maintains a warehouse in King of Prussia, Pennsylvania. The plaintiff is a sole proprietorship that manufactures nylon cord belting in Offenburg, West Germany under the trade name "Vis."

In September 1967 plaintiff's export manager, Alfred Ziegler, sent a letter to the defendant's president, quoting prices on belting and enclosing terms for delivery and payment. Included in the correspondence was a form entitled "General Terms of Sales II." One paragraph in the form limited the plaintiff's liability for defective mer-

chandise to replacement or price reduction and excluded damages of any kind.[1]

In the following month, Ziegler and Vis's owner, Alfred Huber, visited King of Prussia and arranged for sale of their product to the Dick Company. At no time were the Vis general terms of sale discussed, and Dick did not agree to be bound by the provisions of the form, including the limitation on damages recoverable for defective merchandise.

During the period from 1967 to 1974 there were occasions when the plaintiff's product did not meet the defendant's standards, either on initial inspection or after a period of use by defendant's customers. When the defendant issued a credit to a customer for belting that had manufacturing defects, a claim was made to the plaintiff for replacement or credit. If a difference arose between the parties over whether the defect was attributable to the manufacturer, the claim would be compromised.

In late 1973, Dick's problems with the belting increased, the most frequent being delamination, which made the product unusable. Beginning at that time and continuing through 1974, Ziegler complained about Dick's delay in payments. This suit followed the parties' inability to resolve these difficulties.

At trial, the plaintiff asserted that after making allowances for various credits to which it was agreeable, the defendant owed $30,910.29. Against this figure, however, the defendant asserted four counterclaims.

The largest counterclaim was for an equitable setoff of future profits alleged to have been lost because of customer dissatisfaction with Vis's product. The court found the supporting testimony "not worthy of belief" and therefore held that the defendant failed to meet its burden of proof.

The second claim was in the amount of $17,621.51 for eight defective rolls of Vis belting delivered during 1974 and 1975 for which only partial credit had been given. The court noted that the defendant was unable to locate the material or account for its disposition and said, "In effect the [defendant's principal witness] testified that nearly 2500 lbs. of belting had vanished from Dick's custody. On the basis of that record I cannot find that Dick has met its burden of proving it is entitled to credit for this belting."

The court did allow partial recovery on the third and fourth counterclaims. The defendant contended in the third claim that it was entitled to $7,300.69, the amount it had credited its customers for defective material supplied by the plaintiff in 1974. The court, however, awarded $3,398.25, a sum representing the price the defendant paid plaintiff. From this the court deducted $1,473.10, because of a credit that had been extended by the plaintiff in 1974.[2] The fourth claim was for defective belting that one of Dick's distributors sold to a company called Wesco. Dick issued a credit of $7,092.80 on that transaction, but again the court allowed only the amount the defendant had paid plaintiff for the goods, $3,301.95. The court subtracted the amount of credits allowed on these counterclaims from the amount plaintiff sought and entered judgment for $25,683.19. The defendant appeals.

■ The first two counterclaims, those for future lost profits and for the eight rolls of belting, were denied because the defendant failed to meet its burden of proof. The trial judge candidly stated his doubts about the accuracy of the testimony supporting these claims. We will not substitute our evaluation of credibility for that of the judge who saw and heard the witnesses,

---

1. Paragraph 2(e) of the form provides:
   "Reclamations must be made within 10 days after receipt of merchandise and prior to processing or use. Our guaranty is limited to replacement or price reduction and excludes damages of any kind. Also, we do not give a guaranty for specific utilization. Mi-

nor deviations do not provide grounds for reclamations."

2. The parties agree that the $1,473.10 should not have been deducted, and, consequently, we will make an appropriate adjustment in the final judgment.

and, consequently, we find no reversible error here. Fed.R.Civ.P. 52(a); *see Speyer, Inc. v. Humble Oil and Refining Co.*, 403 F.2d 766, 770 (3d Cir. 1968), *cert. denied*, 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed.2d 41 (1969).

■ The issue underlying the remaining two claims is straightforward: Was the defendant entitled to recover the credits granted customers when the product proved defective? In other words, was the defendant entitled to the profits it would have made on those sales? The parties agree that Pennsylvania law applies, particularly Article 2 of the Uniform Commercial Code. U.C.C. §§ 2–101 to 2–725, Pa.Stat.Ann. tit. 12A, §§ 2–201 to 2–725 (Purdon 1970 & Cum.Supp. 1979–80).

Section 2–715(2)(a) provides that consequential damages resulting from a seller's breach include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Pa.Stat.Ann. tit. 12A, § 2–715(2)(a) (Purdon 1970). Official Comment 6 to this section states that where goods are sold to one in the business of reselling them, "resale is one of the requirements of which the seller has reason to know within the meaning of subsection (2)(a)." *Id.* at 555. We believe that the Pennsylvania courts would follow the Code comments and allow damages resulting from an inability to fulfill resale commitments. *See Kelly v. Hanscom Brothers, Inc.*, 231 Pa.Super. 357, 331 A.2d 737 (1974).

There is no dispute that plaintiff was aware of the nature of defendant's business, i. e., that the goods were to be resold. In these circumstances, we conclude that under § 2–715(2)(a) the credits that defendant was obliged to extend to customers are proper consequential damages. R. Anderson, Uniform Commercial Code § 2–715:26, at 478 (2d ed. 1971).

The plaintiff does not dispute this proposition but argues that the parties agreed to exclude recovery of such damages under U.C.C. § 2–719(1)(a). That section provides that the agreement between the parties may provide for limiting the measure of damages, as by restricting the buyer's remedy to return of the goods and repayment of the price or to repair and replacement of nonconforming goods. Pa.Stat.Ann. tit. 12A, § 2–719(1)(a) (Purdon 1970).

There is insufficient evidence in the record to establish an express agreement to limit damages. The trial judge found that the only communication between the parties bearing on the subject was the form sent by plaintiff to defendant in September 1967. He stated that "Dick never expressly consented to the Huber contract" and therefore could not be held subject to it. Nevertheless, the trial judge reasoned that the form had put the defendant on notice that Huber did not intend to assume liability for consequential damages and that Dick therefore had the burden, which it failed to carry, of informing plaintiff that such damages might be demanded.

In *Keystone Diesel Engine Co. v. Irwin*, 411 Pa. 222, 191 A.2d 376 (1963), the Pennsylvania Supreme Court denied recovery because the buyer did not bring home to the seller the fact that he would be held responsible for lost profits. *Keystone*, however, was overruled in *R. I. Lampus Co. v. Neville Cement Products Corp.*, 474 Pa. 199, 378 A.2d 288 (1977).[3]. In the latter case the Pennsylvania court rejected the "tacit agreement" test and held that "[i]f a seller knows of a buyer's general or particular requirements and needs, that seller is liable for the resulting consequential damages whether or not that seller contemplated or agreed to such damages." *Id.* at 209, 378 A.2d at 292. Thus, it is not necessary that the seller agree to be responsible for consequential damages, and the district court erred in requiring the Dick Company to

---

**3.** For scholarly criticism of the *Keystone* decision, see J. White & R. Summers, Uniform Commercial Code § 10–4, at 317–18 (1972); R. Nordstrom, Law of Sales § 153, at 469 n.67

(1970); Holahan & Murray, Commercial Transactions, 1956–1965 Decennial Survey of Pennsylvania Law, 27 U.Pitt.L.Rev. 185, 334 (1966).

prove that it had made plaintiff aware of possible claims of this type.

The plaintiff argues, however, that there was a "course of performance" under U.C.C. § 2–208(1) which established an agreement to forgo consequential damages.[4] Since there was no single contract between the parties, but rather a series of separate sales, we believe it more accurate to characterize the conduct as a "course of dealing," defined in U.C.C. § 1–205(1).[5] The plaintiff's argument is not weakened by adopting the course of dealing route because the Code specifically permits a course of dealing or a usage of trade, unlike a course of performance, to "give particular meaning to *and* supplement or qualify terms of an agreement." U.C.C. § 1–205(3), Pa.Stat. Ann. tit. 12A, § 1–205(3) (Purdon 1970) (emphasis added).[6] In *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir. 1976), we concluded that a limitation of damages could be imposed by a trade usage; it follows that a course of dealing is a circumstance that may establish this term as part of the bargain of the parties in fact. U.C.C. § 1–201(3), Pa.Stat.Ann. tit. 12A, § 1–201(3) (Purdon 1970).

The inquiry then is whether the record establishes the *course of dealing* the plaintiff suggests. Initially we observe that the burden is on the plaintiff to prove the limitation agreement, *see Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1219 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970); *Lincoln Pulp & Paper Co. v. Dravo Corp.*, 436 F.Supp. 262, 269 (D.Me.1977) (applying Pennsylvania law), especially where it is to be found in a course of dealing.[7]

In its findings the district court did not set out facts that would constitute a course of dealing establishing defendant's agreement to forgo consequential damages. On appeal, the plaintiff does not point to specific parts of the record where such facts may be found, nor has our independent review disclosed such evidence. It is not enough that the defendant accepted replacement or credits for the purchase price in many instances. Obviously, if the defects were detected before resale and supplies of belting were available to fill outstanding orders, the defendant might not have had a claim for lost profits. In other instances it may well be that even after resale, the defendant's customers were content to accept replacement rather than demand a refund. Moreover, the record does show that the parties compromised many of the claims for defects in workmanship.

We find no instances in which the defendant had made a claim for loss of profits on resale transactions other than those underlying the counterclaims. If such claims had been made and then been denied by the plaintiff without protest from the defendant, the argument that a course of dealing established such a limitation might have

---

4. Pa.Stat.Ann. tit. 12A, § 2–208(1) (Purdon 1970) provides:

   "(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."

5. Pa.Stat.Ann. tit. 12A, § 1–205(1) (Purdon 1970) provides:

   "(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."

6. By its own terms, a course of performance goes no further than being "relevant to determine the meaning of the agreement." U.C.C. § 2–208(1), Pa.Stat.Ann. tit. 12A, § 2–208(1) (Purdon 1970). Nevertheless, courts have generally allowed a course of performance to supplement and qualify the terms of an agreement as well. J. White & R. Summers, Uniform Commercial Code § 3–3 (1972).

7. In discussing terms supplied by a course of dealing, a usage of trade, and a course of performance, Professors White and Summers have observed:

   "Who has the burden of proof? The Code does not say. Yet courts are likely to impose the burden of proof on the party who seeks to benefit from evidence of course of dealing, trade usage, or course of performance."

   J. White & R. Summers, Uniform Commercial Code § 3–3, at 88 (1972) (footnote omitted).

some force. *Cf.* U.C.C. § 2–208(1), Pa.Stat. Ann. tit. 12A, § 2–208(1) (Purdon 1970) ("any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement") (quoted in full at note 4 *supra* ). Absent such circumstances, however, we cannot say that the plaintiff has met the burden of proving a limitation agreement. Accordingly, the defendant is entitled to recover on the two counterclaims for loss of profits on actual sales.

The total of the two counterclaims is $14,393.49. The parties agree that the increases sought by the defendant and contained in this figure accurately reflect the loss on sales. That total will therefore be deducted from the amount which plaintiff claimed to be due—$30,910.29—thus resulting in an award to the plaintiff of $16,-516.80. The case will be remanded to the district court so that it may modify its judgment accordingly.