**ARGO WELDED PRODUCTS, INC.**

v.

**J. T. RYERSON STEEL & SONS, INC.**

**ARGO WELDED PRODUCTS, INC.**

v.

**BRANDYWINE MACHINE COMPANY, INC.**

Civ. A. Nos. 79–4710, 80–4107.

United States District Court,
E. D. Pennsylvania.

Dec. 16, 1981.

584

John R. Vivian, Martin Cohen, Easton, Pa., for plaintiff.

Gene E. K. Pratter, Duane, Morris & Heckscher, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

In these consolidated diversity actions,[1] the plaintiff, Argo Welded Products, Inc.

1. Jurisdiction is based on 28 U.S.C. § 1332. The jurisdictional facts alleged in the complaints are as follows. Argo is incorporated in New Jersey and has its principal place of business there. Each of the defendant corporations is incorporated under the laws of Pennsylvania and has its principal place of business in this

(Argo), is suing J. T. Ryerson Steel & Sons, Inc. (Ryerson) and Brandywine Machine Company, Inc. (Bramco) for supplying it with steel that failed to meet the specifications set forth in Argo's purchase order to Ryerson. Pleading separate causes of action sounding in negligence and contract, Argo seeks to recover exemplary damages, damages for loss of bargain, and other consequential damages. The defendants have moved for partial summary judgment contending that, at most, Argo is entitled only to damages for loss of bargain. Fed.R. Civ.P. 56.

The facts of this case are relatively simple. In early May 1979, after informal telephone discussions, Argo agreed to buy and Ryerson agreed to sell eight 304L stainless steel rings for a specified price. Ryerson was not aware of it, but Argo intended to use this material to satisfy an order it had recently received from its most significant customer, Ingersoll-Rand Company (Ingersoll-Rand). On May 15, 1979, Argo mailed a purchase order to Ryerson confirming the basic transaction. The Argo purchase order apparently did little more than restate the nature and quantity of the materials sought, the price, and a requirement that Argo be furnished with test certificates from the mill which produced the steel.[2]

At the time it received Argo's order, Ryerson did not have in stock the necessary raw materials. It purchased the desired steel from Bramco, another steel warehouse. Bramco delivered the steel to Ryerson with the corresponding mill test reports, and Ryerson, in turn, shipped the steel from its warehouse in Pennsylvania to Argo in New Jersey on June 26, 1979. Shortly after receiving the steel, and apparently without having made an inspection, Argo fabricated

the material to Ingersoll-Rand's specifications.

In early July, Argo delivered the fabricated steel and mill test certificates to the Turbo Products Division of Ingersoll-Rand in New Jersey. Ingersoll-Rand tested the material a few weeks after delivery and determined that it was not 304L stainless steel. Argo was notified and, in September 1979, Argo and Ingersoll-Rand agreed to have the material tested by two independent outside laboratories. The test results confirmed that the material was not 304L stainless. The Turbo Products Division of Ingersoll-Rand then cancelled its order and refused to do business with Argo for approximately one year. Argo alleges that as a result, it not only lost $12,591 on the order, but also lost $300,000 worth of potential business from the Turbo Products Division.[3] To recover these losses, Argo instituted the present action against Ryerson and, upon learning that Bramco had supplied the steel to Ryerson, commenced a separate action against Bramco. On January 23, 1981, I ordered that the actions be consolidated for all purposes. Each of Argo's complaints states two causes of action, one in assumpsit for breach of contract and the other in trespass for negligently supplying it with nonconforming goods.[4] Exemplary damages are sought under the second cause of action.

## ARGO'S NEGLIGENCE CAUSE OF ACTION

There is no dispute, for purposes of this motion, to the facts as stated thus far. The defendants argue in their joint motion that, on these facts, they are entitled to summary

state. The amount in controversy exceeds $10,000.

2. When purchasing steel from a steel warehouse, as is Ryerson, it is custom in the industry to request copies of the test reports made by the steel mill which actually produced the steel. (Paul J. Dougherty N.T. at 130-34).

3. Argo continued to do business with other divisions of Ingersoll-Rand over this one-year period.

4. Argo's cause of action in trespass is the same against both defendants. The assumpsit cause of action against Ryerson is based on the alleged breach by Ryerson of its agreement with Argo to sell 304L steel, whereas Argo's contractual claim against Bramco is based upon the alleged breach by Bramco of its agreement with Ryerson. Argo contends that it was a third-party beneficiary of this latter agreement.

judgment in their favor on Argo's cause of action in negligence and claim for exemplary damages. Defendants' argument rests upon their assertion that Pennsylvania law does not permit recovery in negligence for purely economic loss. They contend that Argo's remedies are governed by article 2 of the Pennsylvania Uniform Commercial Code, 13 Pa.Cons.Stat. §§ 2101, et seq.[5] Argo does not dispute defendants' interpretation of Pennsylvania law, but argues that, under Pennsylvania choice of law principles, a Pennsylvania court would apply New Jersey law with respect to all legal issues in this lawsuit.

The parties agree that Pennsylvania's choice of law rules apply in this diversity action. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Application of the correct choice of law rule, however, very often implicates the problem of characterizing correctly the nature of the choice of law question involved. Fortunately, that problem is not present here because Pennsylvania applies the same flexible choice of law methodology to conflicts questions involving tort, contract or sales.[6] This approach "takes into account both the grouping of contacts with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction." Melville v. American Home Assurance Co., 584 F.2d 1306, 1311 (3d Cir. 1978).

Before undertaking application of this flexible approach, it is essential to examine the applicable law of Pennsylvania and New Jersey to determine whether Argo would be allowed to pursue its negligence cause of action in either jurisdiction. Applying the same reasoning as in my opinion in Iron Mountain Security Storage Corp. v. American Specialty Foods, Inc., 457 F.Supp. 1158 (E.D.Pa.1978), it is evident to me that Pennsylvania would not permit any tort recovery in this case. If any duties to Argo have been breached, they were, under Pennsylvania law, purely contractual. Tort recovery is allowed, if at all, solely to recompense breaches of social obligations. See Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1169 (3d Cir. 1981); Iron Mountain Security Storage Corp., supra, at 1165. It can be readily determined from even the most cursory examination of Argo's complaints that the duties defendants are alleged to have breached extended to no one other than Argo. I conclude, therefore, that if Pennsylvania law is applied, Argo cannot recover in negligence. Moreover, Pennsylvania does not permit recovery of punitive damages in an action for breach of contract. Hoy v. Gronoble, 34 Pa. 9 (1859); Narrowsburg Lumber Co. v. Hopkins, —— Pa.Super. ——, 429 A.2d 724 (1981).

Although Argo contends that New Jersey law applies, it cites no authority for the proposition that an action in negligence may be maintained to recover damages for economic loss alone. I am aware that New Jersey is within a small minority of jurisdictions which, in very limited circumstances, permits a party to recover in tort for loss of bargain.[7] See Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965);

---

5. After this action was commenced, the Pennsylvania legislature transferred the text of the Uniform Commercial Code to title 13 of the Pennsylvania Consolidated Statutes. In so doing, however, the legislature provided that the substantive law which had developed under the Code was left unchanged by the transfer. See 13 Pa.Cons.Stat.Ann. § 1101 (Purdons Pamphlet 1980) (explanatory notes).

6. See Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964) (torts); Melville v. American Home Assurance Co., 584 F.2d 1306 (3d Cir. 1978) (contracts); Armstrong Cork Co. v. Drott Mfg. Co., 433 F.Supp. 413 (E.D.Pa.

1977) (U.C.C.); Tucker v. Capitol Machine, Inc., 307 F.Supp. 291 (M.D.Pa.1969) (U.C.C.).

7. In Santor v. A&M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965), the consumer-plaintiff purchased carpeting which subsequently turned out to be defective. The Supreme Court of New Jersey held that the plaintiff could sue the manufacturer for breach of implied warranty despite the lack of privity between them. In dicta, the court, reasoning that the manufacturer was better able to spread the risk of economic loss, went on to declare that the plaintiff also possessed a cause of action for strict liability in tort.

*Monsanto Co. v. Alden Leeds, Inc.*, 130 N.J. Super. 245, 326 A.2d 90 (Law Div.1974). *See also Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 285–87 & n.13 (3d Cir. 1980). However, I am not aware of any New Jersey precedent either permitting or prohibiting a party from proceeding in negligence to compensate for a commercial injury.[8] New Jersey law is clear with respect to one element of Argo's negligence cause of action; it would not permit Argo to recover punitive damages in this case under any theory. *See Sandler v. Lawn-A-Mat Chemical & Equipment Corp.*, 141 N.J.Super. 437, 358 A.2d 805 (App.Div.1976). In *Sandler*, the court held that "[w]here the essence of a cause of action is limited to a breach of a [commercial] contract, punitive damages are not appropriate regardless of the nature of the conduct constituting the breach." *Id.* at 449, 358 A.2d 805. No detailed analysis is needed to conclude that the "essence" of Argo's negligence claims is founded on a breach of contract. Moreover, it is of no help to Argo's position that it alleges that the defendants' actions constituted wanton and willful misconduct. For as the *Sandler* court observed:

> The additions of such stylized labels as "malice" and "maliciously" in the pleadings and pretrial order do not transform the essence of the action into a tortious wrong. Regardless of these labels, plaintiffs' grievance is founded upon the breach of contract between the parties—a contract which creates no special relationship or duty beyond that arising out of any commercial transaction. As such, punitive damages are not recoverable against the breaching party.

*Id.* at 451, 358 A.2d 805. There is, therefore, no conflict between Pennsylvania and New Jersey law with respect to Argo's claim for exemplary damages. Neither permits recovery.

On the basis of the broad language in *Sandler, supra*, I would predict, were it necessary for me to do so, that New Jersey would not permit Argo to pursue its negligence cause of action to recover even compensatory damages. Because I believe that an application of Pennsylvania's choice of law rules leads to the conclusion that Pennsylvania would apply its own law to this issue, I need not make such a forecast. Examining the jurisdictional contracts, Ryerson and Bramco are both Pennsylvania corporations. All aspects of the agreement between them were concluded and performed in Pennsylvania. On the other hand, Argo, a New Jersey corporation, initiated the dealings with Ryerson by telephoning its order to Ryerson in Pennsylvania. Ryerson concluded these dealings by shipping the alleged nonconforming goods to Argo in New Jersey. Argo urges me to count the contacts and find that the contacts with New Jersey are more numerous,[9] but application of modern choice of law principles involves more than the mere counting of contacts. Indeed, counting contacts in this case resolves little, if anything. The proper approach is to weigh these contacts in light of the interests which New Jersey and Pennsylvania have in ensuring that their own law is applied.

Assuming, arguendo, that New Jersey recognizes a cause of action in negligence to recover for economic loss, New Jersey obviously has an interest in compensating Argo, a New Jersey corporation, for any injury it may have suffered as a result of defendants' breach of duty. Likewise, Pennsylvania has an interest in protecting commercial transactions negotiated within its borders by ensuring that damages for breach are limited by the scope of the parties' agreement. *See Iron Mountain Security Storage*

---

8. *But cf. Commonwealth Title Insurance & Trust Co. v. New Jersey Lime Co.*, 86 N.J.Eq. 450, 454, 100 A. 52, 53 (1916) (nonperformance of contractual obligation is not actionable in tort).

9. In adding the jurisdictional contacts, Argo also includes its dealings with Ingersoll-Rand, all of which took place in New Jersey. These contacts, however, are irrelevant. Neither Bramco nor Ryerson was aware that Argo intended to use the steel to satisfy an order of Ingersoll-Rand. More importantly, Argo's cause of action was complete upon delivery of the nonconforming steel.

*Corp., supra,* at 1165. Balancing these interests, Pennsylvania's interest in preserving freedom of contract is paramount. Pennsylvania's interest would be completely defeated if New Jersey law were applied. Application of Pennsylvania law, on the other hand, would not defeat New Jersey's compensatory interest. Moreover, since New Jersey would not allow Argo to recover punitive damages in this case, I conclude that New Jersey's compensatory interest is weak in relation to Pennsylvania's interest.

There is an additional reason for rejecting Argo's contention that New Jersey law applies to its negligence cause of action. For the purpose of analysis, I have assumed that New Jersey would recognize Argo's negligence claim. Because New Jersey's law on the subject is, in fact, unknown or unclear, that arguendo assumption must give way to Pennsylvania's choice of law presumption that New Jersey and Pennsylvania law are in accord. *Melville v. American Home Assurance Co., supra,* at 1308; *In re Trust of Pennington,* 421 Pa. 334, 340, 219 A.2d 353, 356 (1966). Accordingly, summary judgment must be granted in favor of defendants on Argo's causes of action in negligence and claims for punitive damages.

## ARGO'S ASSUMPSIT CAUSE OF ACTION

On its breach of contract claims, Argo seeks to recover consequential damages in the amount of (1) $12,591 for loss of revenue from cancellation of the Ingersoll-Rand purchase order; (2) $300,000 for the loss of the Turbo Products Division as a customer for approximately one year; and (3) $1,200 for expenses incurred in restoring customer goodwill. Defendants have moved for partial summary judgment, contending that (1)

as a matter of Pennsylvania law, damages for loss of customer goodwill are not recoverable in an action for breach of contract or warranty, and (2) Argo's claims for consequential damages are barred by a limitation of liability provision in the Argo-Ryerson agreement.

I shall first address defendants' contention that damages for loss of goodwill are barred by Pennsylvania law.

### Loss of Goodwill

■ Argo does not dispute that Pennsylvania categorically denies recovery for loss of goodwill caused by customer dissatisfaction with a defective product. *See, e.g., Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1225 (3d Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970); *Kassab v. Central Soya,* 432 Pa. 217, 237 n.12, 246 A.2d 846, 848 n.12 (1968); *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.,* 396 Pa. 506, 513, 153 A.2d 472, 476 (1959). Rather, it maintains, once again, that a Pennsylvania court would apply New Jersey law to this issue.

■ Earlier in this opinion, I assumed that New Jersey law was more favorable to Argo and applied Pennsylvania's flexible choice of law methodology for the purpose of demonstrating the non-existence of any real conflict. I hesitate to apply that same analysis to the issue of whether Argo may recover damages for the loss of goodwill since it would only serve to create a conflict where none may in fact exist. Extensive research has uncovered no reported decision applying New Jersey law that has addressed the question whether damages are recoverable under U.C.C. § 2–715 for the loss of future business caused by customer dissatisfaction with a defective product.[10]

10. In support of its position that damages for loss of goodwill are recoverable under New Jersey law, Argo cites *Buono Sales, Inc. v. Chrysler Motors Corp.,* 449 F.2d 715 (3d Cir. 1971). In *Buono,* the plaintiff, an automobile dealer, was permitted to recover damages for net profits lost on future DeSoto sales when the defendant discontinued production of the car in breach of the dealership agreement. *Buono* is clearly inapposite. The loss of goodwill for

which Pennsylvania denies recovery was defined in *Neville Chemical Co., supra,* as "the loss of profits resulting from customer dissatisfaction with a plaintiff because the product previously supplied by the defendant was defective," 422 F.2d at 1227, and is distinguishable from the "loss of profits caused by inability of a plaintiff to use specific property destroyed, damaged or withheld by a defendant's wrong, and profits lost on the particular sale or con-

Likewise, the annotators have been unsuccessful in finding any authority on the subject. *See, e.g.,* Anno., *Buyer's Incidental and Consequential Damages From Seller's Breach Under U.C.C. § 2–715,* 96 A.L.R.3d 299, 395–98 (1979 & 1981 Supp.). Thus, applying Pennsylvania's conflicts rule that "when a sister state's law is unknown or unclear it is presumed to be the same as Pennsylvania's," *Melville v. American Home Assurance Co., supra,* at 1308, I conclude that Pennsylvania would apply its own law to the issue of whether Argo may recover for the loss of customer goodwill. Accordingly, partial summary judgment will be granted in favor of defendants on Argo's claim for $300,000 in damages for the loss of Ingersoll-Rand as a customer.

Similarly, I find that Argo's claim for $1,200 damages for expenses incurred in renewing its business relations with Ingersoll-Rand must stand on the same footing as its claim for loss of goodwill. Pennsylvania's refusal to award damages for *loss* of goodwill is based upon its belief that such damages are too speculative in nature to permit recovery. *Harry Rubin & Sons, Inc., supra,* 396 Pa. at 513, 153 A.2d at 476. If that is so, damages for *restoring* goodwill are even more attenuated.

The speculative nature of the damages relating to goodwill is particularly acute in this case. Ingersoll-Rand's dissatisfaction with Argo did not begin when the goods in question were delivered in July 1979. It appears that, over a four-year period commencing in 1976, Ingersoll-Rand had encountered numerous problems with Argo's quality control (Exh. A to affidavit of R. H. Fortner, Quality Control Mgr., Turbo Products Division). Very serious questions would arise, therefore, as to whether Ingersoll-Rand's withholding of business could in any way be attributed to defendants' alleged breach.

Because I find that damages for expenses incurred in rebuilding customer goodwill are no less speculative than for loss of goodwill itself, I conclude that Argo is barred by Pennsylvania law from recovering damages for restoration of goodwill. Partial summary judgment will be entered on Argo's claim for $1,200.

### Contractual Exclusion of Liability for Consequential Damages

Argo denies that it agreed to a limitation of liability for consequential damages. Defendants contend that Paul J. Dougherty, an Argo purchasing agent, assented on behalf of Argo to an exclusion of all liability for consequential damages when he signed a Ryerson form, denoted "Original Delivery Receipt", which stated: "Acceptance by you of delivery of any or all of the goods described herein shall constitute your assent (if not theretofore given) to the term of sale set forth on the reverse side hereof." Argo does not deny that Dougherty signed this paper, and it does not deny that the reverse side of the form contained several provisions, including the following limitation of liability clause:

11. *Limitation of Liability:* Your exclusive remedy for breach of contract as to any goods, and our only liability for any such breach, shall be replacement or repair of such goods or repayment to you of the purchase price paid by you for such goods, whichever such remedy we shall select, and if we elect to repay the purchase price of any such goods and so advise you, you must return such goods to us immediately. In no event will we be liable for incidental or consequential damages.

It is Argo's position that U.C.C. 2–207 applies and that under either New Jersey's or Pennsylvania's version thereof,[11] the exclu-

---

tract for the performance of which the goods in question were purchased," *id.* at 1226. The damages awarded in *Buono* were to compensate for the latter type of lost profits and are cognizable under both New Jersey and Pennsylvania law. *See Gulf Chemical & Metallurgical Corp. v. Sylvan Chemical Corp.,* 122 N.J.

Super. 499, 300 A.2d 878 (Law Div.1973), *aff'd,* 126 N.J.Super. 261, 314 A.2d 73 (App.Div. 1974); *R.I. Lampus Co. v. Neville Cement Products Corp.,* 474 Pa. 199, 378 A.2d 288 (1976).

11. Except for minor differences in numbering, Pennsylvania and New Jersey have each adopted the Uniform Commercial Code. *See* 12A

sion of liability for consequential damages could not have become part of the agreement with Ryerson.

Section 2–207 of the U.C.C. provides:

§ 2–207. *Additional Terms in Acceptance or Confirmation*

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Argo contends that the Ryerson delivery receipt constituted a written confirmation of the agreement of sale previously reached between Ryerson and itself, and that the terms on the back of the receipt, including the limitation of liability provision, were in addition to those originally agreed upon. Furthermore, Argo maintains that the statement on the delivery receipt, "Acceptance by you of delivery ... shall constitute your assent ... to the term of sale ...", evidenced Ryerson's intention not to perform unless Argo assented to the additional terms. Argo, therefore, asserts that § 2–207(3) is applicable and accordingly, the terms of its agreement with Ryerson would consist of those originally agreed to, together with any supplementary terms supplied by the Uniform Commercial Code, including §§ 2–711 to 2–717, the buyer's remedies for seller's breach. Alternatively, Argo maintains that even if Ryerson's performance was not expressly made conditional on assent to the additional terms, thereby implicating § 2–207(2), those terms could not automatically have become part of the agreement of sale because they materially altered the contract.

█ I agree with Argo that the limitation of liability issue does not turn on whether § 2–207(2) or § 2–207(3) is applied.[12] Because of the incomplete factual record on this motion, I accept Argo's contention that the delivery receipt contained additional terms which materially altered its agreement with Ryerson. Therefore, the additional terms, including the exclusion of liability for consequential damages, must be construed as proposals for addition to the contract. Clearly the effect is the same as if § 2–207(3) were applied. The Ryerson delivery receipt, in essence, constituted a proposal to modify the original oral agreement to include several additional terms. Thus, the question becomes whether or not Argo effectively agreed to accept Ryerson's proposal.

N.J.Stat.Ann.; 13 Pa.Cons.Stat. For ease of reference, this opinion shall refer to the Uniform Laws Annotated version of the Code.

12. Hence, it is unnecessary at this time to determine whether Ryerson's performance was expressly conditioned on Argo's assent to the terms stated on the reverse side of the delivery receipt. However, I note that, although Pennsylvania and New Jersey have not yet construed the "expressly made conditional on assent" proviso of § 2–207(1), the authority from other jurisdictions does not support Argo's position. The prevailing view is that the proviso is intended to apply "only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms." *Idaho Power Co. v. Westinghouse Electric Corp.*, 596 F.2d 924, 926 (9th Cir. 1979) (quoting *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972)).

On a motion for partial summary judgment, it is not the court's function to decide questions of fact, but to determine whether a genuine issue of material fact remains to be tried. *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). Having moved for partial summary judgment, defendants bear the burden of establishing by competent evidence that no factual dispute exists as to Argo's assent to the terms contained on the back of the Ryerson delivery receipt. Defendants argue that no such dispute exists because Dougherty admitted that he signed the delivery receipt on June 26, 1979, when the steel was delivered to Argo.[13] (Defendants' memorandum of law in support of motion for partial summary judgment at 23). On the other hand, in its memorandum in opposition to defendants' motion for partial summary judgment, Argo alleges that Dougherty signed the delivery receipt "a substantial time after" Ryerson delivered the material and, "in all probability," after Argo had fabricated the raw steel and shipped it to Ingersoll-Rand. (Plaintiff's memorandum of law in opposition to defendants' motion for partial summary judgment at 4). Therefore, Argo contends that Dougherty's signature cannot be construed as an assent to the proposed terms since the terms of the contract had already become fixed.

Unfortunately for Argo, issues of fact are not created by the statements of counsel in their memoranda of law. *Tunnell v. Wiley*, 514 F.2d 971, 975 (3d Cir. 1975). If a triable issue of fact exists, it must be established by the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c); *see Manetas v. International Petroleum Carriers, Inc.*, 541 F.2d 408, 409, 413 (3d Cir. 1976). In order to establish that Argo's purchasing agent,

Paul J. Dougherty, signed the delivery receipt on the date the material was delivered, defendants rely on the deposition of Dougherty himself, who clearly and unequivocally admitted to having signed the document on that date. (Dougherty N.T. at 160–64). To refute defendants' contention, Argo offers only the affidavit of George J. Oliver, Sr., Argo's president, who avers: "[I]t is my understanding, based upon the deposition of Paul J. Dougherty, that his signing of said purchase order and delivery receipt occurred after acceptance of the goods in question from Ryerson." (George J. Oliver, Sr., aff. ¶ 6). Since Oliver obviously has no personal knowledge of when Dougherty signed, absolutely no weight can be given to his averments on that issue. Fed.R.Civ.P. 56(e); *see Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972); *Carey v. Beans*, 500 F.Supp. 580, 583 (E.D.Pa.1980). Dougherty's admission that he signed the delivery receipt when the steel was delivered remains uncontroverted.

The legal effect of the signed delivery receipt is the sole issue that remains to be resolved on this motion. Defendants argue that the signed receipt evidences Argo's express consent to Ryerson's terms, including the exclusion of liability for consequential damages. Argo responds contending that these terms, set forth in small inconspicuous type on the reverse side of a Ryerson standard printed form, were never expressly negotiated and, had Argo been aware of the exculpatory provisions, it certainly would have objected to them. Argo maintains, therefore, that the Ryerson terms could not have become part of their agreement because there was never any meeting of the minds.[14] Furthermore, Argo contends that, in any event, the limitation of liability clause cannot be given

---

**13.** Defendants also assert that a form acknowledgment that contained terms identical to those on the reverse side of the delivery receipt was sent by Ryerson to Argo before the steel was delivered. (Defendants' reply memorandum to plaintiff's memorandum in opposition to motion for partial summary judgment at 2). For purposes of this motion, however, I must accept the truth of Paul J. Dougherty's deposition testimony which states that this "acknowledgment" was received after Argo had taken delivery of steel. (Dougherty N.T. at 164).

**14.** So that the record is clear, I note that no argument is raised disputing Dougherty's authority to contract on Argo's behalf for the purchase of raw materials.

legal effect because it is both unconscionable and fails of its essential purpose. *See* 12A N.J.Stat.Ann. § 2–719; 13 Pa.Cons. Stat. § 2719.

Inasmuch as it is beyond this court's power to resurrect the long-departed subjective approach to contract law, I cannot accept Argo's "meeting of the minds" argument. Both New Jersey and Pennsylvania adhere to the objective theory of contracts and would look to Argo's outward manifestations in determining whether Argo did, in fact, agree to Ryerson's terms. *See Leitner v. Braen*, 51 N.J.Super. 31, 143 A.2d 256 (App.Div.1958); *Beliron Construction Co. v. Potomac Insurance Co.*, 230 Pa.Super. 379, 326 A.2d 499 (1974). Ordinarily, resolution of this type of issue would require a factual finding which would preclude a grant of summary judgment. *Rose v. Mitsubishi International Corp.*, 423 F.Supp. 1162 (E.D.Pa. 1976). But it is hornbook law that a party who signs a standard printed form agreement is bound by its terms absent any countervailing public policy considerations. J. Calimari & J. Perillo, *Contracts* 328–29 (1977). *See also Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960); *Montgomery v. Levy*, 406 Pa. 547, 177 A.2d 448 (1962). Thus, under either Pennsylvania or New Jersey law, Argo is deemed to have manifested its assent to Ryerson's terms.

The signed delivery receipt, although itself a legally sufficient acceptance of the Ryerson proposal, is not the sole evidence of Argo's assent. Both sides admit that there has been a prior course of dealing between them. Defendants argue that the limitation of liability provision was added to their original agreement by this course of dealing. *See* U.C.C. § 1–205(3). I cannot conclude, based upon the present record, that the limitation of liability was incorporated into the parties' agreement by reason of their prior course of dealing alone. *See Kunststoffwerk Alfred Huber v. R. J. Dick, Inc.*, 621 F.2d 560 (3d Cir. 1980). However, the legal significance of the signed delivery receipt is certainly colored by that prior course of dealing. Ryerson had used the same type of standard printed delivery receipt during at least five previous transactions with Argo. (Hickey Aff. at ¶ 7). Dougherty admitted that he was familiar with the form. (Dougherty N.T. at 158, 161). Although Dougherty may have had no knowledge of the terms contained on the delivery receipt, his signature, objectively considered, clearly manifested Argo's assent to the terms contained on the receipt. *Accord F.D. McKendall Lumber Co. v. Kalian*, 425 A.2d 515 (R.I.1981). Therefore, I conclude as a matter of law that Argo agreed to accept the terms of the Ryerson proposal.

Finally, Argo contends that even if it did agree to Ryerson's terms, the limitation of liability provision cannot be enforced because (1) it is unconscionable and (2) it contains an exclusive remedy of replacement or repair which failed of its essential purpose. Argo relies on U.C.C. § 2–719, which reads:

§ 2–719. *Contractual Modification or Limitation of Remedy*

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limita-

tion of damages where the loss is commercial is not.

The argument that the exclusive remedy failed of its essential purpose is absolutely without merit. It is uncontroverted that, shortly after learning that the steel failed to meet Argo's specifications, Ryerson offered to replace or give credit for the defective material. (Oliver, Sr. N.T. at 82–84; Dougherty N.T. at 190–91; Hickey N.T. at 8). Argo rejected that offer. (Oliver, Sr. N.T. at 84). Having done so, Argo cannot now claim that the replacement or repair remedy failed of its essential purpose. *See also Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081 (3d Cir. 1980) (applying 12A N.J.Stat.Ann. § 2–719(2)); *Ebasco Services, Inc. v. Pennsylvania Power & Light Co.*, 460 F.Supp. 163, 211–13 (E.D. Pa.1978) (applying 13 Pa.Cons.Stat. 2719(b)).

Section 2–719(1)(a) of the Code expressly recognizes that the parties may agree to limit the buyer's remedy for breach to replacement or repair of the defective goods. Thus, Argo bears a heavy burden in sustaining its claim that the limitation of liability provision is unconscionable. J. White & R. Summers, *Uniform Commercial Code*, 384 (2d ed. 1980). Argo maintains that it was unfairly surprised because the provision was printed in small, inconspicuous type on the back of a standard form confirmation. I do not accept that argument. Under New Jersey and Pennsylvania law, unconscionability is a question of law to be determined from the factual circumstances surrounding the formation of the contract. 12A N.J.Stat. Ann. § 2–302; 13 Pa.Cons.Stat. § 2302. In this case, those facts are not in dispute. Argo has been in the business of purchasing and fabricating raw steel for resale for 19 years. (Oliver, Sr. N.T. at 3). During 1979 and continuing to the present, Argo operated two plants and employed several employees. (*Id.* at 8–10). Ryerson is but one of Argo's many suppliers of raw materials. (*Id.* at 26–28; Dougherty N.T. at 130–31). These facts establish that this was not a "take it or leave it" transaction between a consumer-purchaser and manufacturer.

Furthermore, Paul Dougherty has been employed by Argo for over 13 years. Argo has done business with Ryerson throughout his period of employment. (Dougherty N.T. at 130). Dougherty also admitted that he was familiar with Ryerson's business forms before June 26, 1979. (*Id.* at 158, 161). Based on these facts, I find it inconceivable that Argo can claim unfair surprise. Admittedly, Argo may have been unaware of the terms contained on the Ryerson delivery receipt. But, hardly a novice at purchasing raw materials, Argo surely should have expected that a seller might respond to its purchase order with a confirmation containing additional or contradictory terms. Although it had several means of protecting itself against an attempted modification of the terms of its purchase order, Argo availed itself of none of them. The drafters of the Code obviously did not intend that § 2–719(3) could be used to relieve an experienced merchant of the misfortunes occasioned by his own poor business practices. Under these circumstances, I conclude that the limitation of liability provision is not unconscionable.

In summary, whether I apply Pennsylvania or New Jersey law to the issue of the effectiveness of the limitation of liability provision, it is clear that (1) Argo is bound by the terms of the Ryerson delivery receipt, (2) the exclusive remedy contained within the provision did not fail of its essential purpose, and (3) the provision is not unconscionable. Therefore, I conclude that the exclusion of liability for consequential damages bars Argo from recovering on its claims for loss on the sale to Ingersoll-Rand, loss of goodwill, and for expenses incurred in rebuilding goodwill. Partial summary judgment will be granted as to all of Argo's claims for consequential damages.

## CONCLUSION

Under Pennsylvania law, which is controlling on the issue, Argo has no cognizable cause of action in negligence. Accordingly, summary judgment will be granted in favor of both defendants on Argo's second cause of action.

As to Argo's first cause of action in assumpsit, I conclude that, under both New Jersey and Pennsylvania law, Argo effectively agreed to exclude all liability for consequential damages. Thus by the terms of the agreement, Argo is barred from recovering damages for revenue lost on the cancellation of the Ingersoll-Rand purchase order, loss of goodwill, and for expenses paid in restoring customer goodwill. Argo's claims for loss of goodwill and for restoring goodwill are also not cognizable damage claims under Pennsylvania law. Accordingly, partial summary judgment will be granted in favor of both defendants on all of Argo's claims for consequential damages.